Charles M. Walker
U.S. Bankruptcy Judge
Dated: 9/7/2017



UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF TENNESSEE

| In re: | ) | |
|---|---|---|
| | ) | |
| VINCENT JAMES ZENGA, | ) | Case No. 316-01661 |
| | ) | Chapter 7 |
| Alleged Debtor, | ) | Judge Walker |
| | | |
| ROBIN ZENGA, | ) | Case No. 316-01662 |
| | ) | Chapter 7 |
| Alleged Debtor, | ) | Judge Walker |

**MEMORANDUM**

This matter is before the Court on remand from the Sixth Circuit Bankruptcy Appellate Panel ("Panel") for determination of one issue: did the petitioning creditor rely to his detriment on the alleged debtors' misrepresentations in a state court proceeding when he filed involuntary bankruptcy cases against them as the sole petitioning creditor?

<u>Background</u>

Ivan Qi ("Mr. Qi") entered into an agreed judgment in the amount of $2.5 million in 2009 as a result of a state court action brought by him against Vincent and Robin Zenga ("Zengas"). Mr. Qi served the Zengas with interrogatories in his attempt to execute on the judgment. In those sworn interrogatories, the Zengas stated they had eleven creditors, including Mr. Qi. Based on that information, when his collection efforts failed, Mr. Qi filed involuntary bankruptcy petitions

1

Case 3:16-bk-01661    Doc 94    Filed 09/07/17    Entered 09/07/17 15:05:32    Desc Main
Document      Page 1 of 7

against each of the Zengas individually.[1]  The Zengas filed motions to dismiss for each case alleging they actually had twenty-one creditors; consequently, the petitions were subject to dismissal as three petitioning creditors were required in that instance.[2]

The motions to dismiss were set for the presentation of evidence and argument on May 31, 2016.  In his ruling, Judge Lundin held that Mr. Qi met the elements for equitable estoppel, and entered the orders for relief.  The Zengas appealed to the Panel and obtained a stay of the orders for relief pending appeal.

The Panel's Ruling

The Panel considered the elements necessary to establish equitable estoppel as: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *In re Zenga*, 562 B.R. 341, 350 (B.A.P. 6th Cir. 2017), *citing Michigan Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004, *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000).

The Panel's remand was based on the finding that when considering Mr. Qi's position that the Zengas were estopped from claiming that three petitioning creditors were required to file involuntary petitions against the Zengas, the bankruptcy court neglected to determine *all* of the elements of equitable estoppel.  The Panel noted that there was no dispute as to the first two elements and found that Mr. Qi met his burden as to the first two elements, and part of the third—that he relied on the information.  However, when considering that reliance, the Panel held that the bankruptcy court had failed to address the detriment of that reliance.

---

[1] Individual cases have been maintained due to the involuntary nature of the filings.  Since all of the filings in each case have been identical, this opinion will apply to each case and entered in each case.
[2] *See* 11 U.S.C. § 303(b).

In order to meet the requirements for equitable estoppel, Mr. Qi must have suffered some loss, damage, or disadvantage as a result of his reliance on the Zengas' misrepresentation that they only had eleven creditors. The Panel remanded the proceeding for determination by the bankruptcy court regarding the detrimental effect of that reliance. *Zenga*, 562 B.R. at 350-51.

Proceedings on Remand

The bankruptcy court[3] conducted an evidentiary hearing on August 1, 2017. The parties appeared through counsel and presented argument and evidence as to the sole remaining issue: did Mr. Qi suffer the requisite detriment for his reliance on the Zengas' misrepresentations in their state court filings? The only witness called to the stand was Philip Groves, President of DAC Management ("DAC"). Mr. Groves testified under direct examination that an agreement was forged between DAC and Mr. Qi to collect on the state court judgment. In furtherance of the collection efforts, DAC retained the law firm of Bass, Berry & Sims ("Bass Berry") to assist in the collection against the Zengas in the state of Tennessee. Bass Berry pursued the collection of the judgment, and in doing so, made several attempts to obtain information regarding the Zengas' financial status—including a complete list of creditors. Based on the Zengas' sworn interrogatories in those state court cases, Mr. Qi authorized Bass Berry to file involuntary bankruptcy petitions against the Zengas individually.

Mr. Groves' testimony focused on the efforts of DAC and Bass Berry to collect on the judgment. He verified the services rendered, and the fees and expenses incurred by both entities and charged to Mr. Qi for pursuit of the judgment.

---

[3] Judge Lundin conducted the hearing on May 31, 2016 prior to his retirement. Judge Walker conducted the proceedings held upon remand, and presides over the cases going forward.

3

Also offered as evidence on Mr. Qi's behalf was Mr. Groves' declaration filed February 21, 2017. The declaration supported his testimony that Mr. Qi has incurred in excess of $64,000 in professional fees pursuing the Zengas through the bankruptcy and the appeal of the entry of the orders for relief. The declaration contained an invoice from Bass Berry as an attachment. The declaration and attachment were entered into evidence. This evidence also indicated that the post-judgment interest rate had increased the judgment to an amount in excess of $4.4 million. The Zengas presented no evidence to contradict Mr. Groves' testimony, the contents of his declaration, or the Bass Berry invoice.

Detrimental Reliance

Equitable estoppel is invoked to prevent an injustice. It comes into play when a party asserts a position contrary to a previous position and another party relies on the previous position to his detriment. *In re Crain*, 158 B.R. 608 (Bankr. W.D. Pa. 1993), *citing Heckler v. Community Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 2223, 81 L. Ed. 42 (1984).

In order to meet the requirements for equitable estoppel, Mr. Qi must have suffered some loss, damage, or disadvantage as a result of his reliance on the Zengas' misrepresentation that they only had eleven creditors. *Zinga*, 562 B.R. at 350-51. This is the sole consideration before this Court. The reliance portion has been established and affirmed by the Panel. Now there must be a determination of what, if anything, was suffered as a result of that reliance.

The "detriment" in "detrimental reliance" refers to a substantial loss, damage, or change in position suffered by the party asserting the estoppel. *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214 (6th Cir. 1990), *citing Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir. 1982). The Panel, when considering the lack of findings regarding any detriment suffered by Mr. Qi, discussed several Sixth Circuit opinions involving the issue.

4

The Panel first referred to the ruling in *Deschamps v. Bridgestone Americas, Inc.*, for the premise that the detriment suffered must be "actual and substantial." 840 F.3d 267, 276 (6th Cir. 2016). In *Deschamps*, the court determined that Deschamp's reliance resulted in a lost opportunity to improve his employment position. Such a loss was significant enough to establish detrimental reliance, and support entry of summary judgment in his favor on his equitable estoppel claim.

Second, the Panel looked at an unpublished opinion in which the Sixth Circuit Court of Appeals considered a loss of evidence and a loss of the opportunity to improve one's position to be a detriment in its ruling in favor of a plaintiff in his ERISA estoppel claim. *Smiljanich v. General Motors Corp.*, 302 F. App'x 443 (6th Cir. 2008). In *Smiljanich*, the plaintiff, in relying on statements from his employer regarding his employment status, allowed other opportunities to pass that may have led to an increase in salary. The court held that the "lost opportunity" detriment, where it is reasonably clear that the plaintiff suffered a loss, supported estoppel relief. *Smiljanich,* 302 F. App'x at 450, *citing Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1299 (6th Cir. 1991).

Mr. Qi's Detriment

In determining if Mr. Qi suffered any detriment as a result of his reliance on the Zengas' false statements, the Court must conduct a factual inquiry, as well as a counterfactual inquiry. *See Smiljanich,* 302 F. App'x at 450. The factual inquiry relies on the uncontroverted declaration and testimony of Mr. Groves. Mr. Groves established Mr. Qi's approach to collecting on the agreed judgment. Mr. Qi's actions in pursuing the judgment were reasonable and thorough. His counsel's inquiry as to the number of creditors went above and beyond due diligence. *See Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004), *citing Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1316

(S.D.N.Y. 1997) (party invoking estoppel is "required to demonstrate that his ignorance is not attributable to a lack of diligence on his part").

The Zengas were given every opportunity to disclose the information they chose to hide from Mr. Qi—that being the number and identity of all of their creditors. Mr. Qi incurred significant costs related to his actions in reliance on the Zengas misrepresentations, that being attorneys' fees and costs in excess of $64,000, as well as the costs associated with Mr. Groves' services on behalf of DAC.

Additionally, Mr. Qi's position as to collection of the debt was negatively impacted in a number of ways: 1) Mr. Qi filed the involuntary petitions in March of 2016, over 18 months ago. During that time, Mr. Qi has been prevented from pursuing collection of the debt; 2) the amount of the judgment debt has now reached over $4.4 million, a substantial increase from the original amount of $2.5 million; and, 3) the bankruptcy proceedings, and Mr. Qi's ability to collect anything through those proceedings, have been stalled by the Zengas' actions in this court and before the Panel.

The counterfactual inquiry is basically a "what if" analysis. *Smiljanich*, 302 F. App'x at 450-51. For example, what if the Zengas had truthfully disclosed the identity and number of their creditors? In that instance, Mr. Qi could have sought out additional petitioning creditors, affording him the opportunity to protect and pursue his interests under the Bankruptcy Code. He would not have solely incurred the attorneys' fees and costs associated with the filing of the bankruptcy petitions, and he certainly would not have solely born the costs associated with any appeal.

If, however, he could not find any allies in the Zengas' creditors, he could have pursued his collection efforts in any number of ways unfettered by the

restrictions placed on him by the Bankruptcy Code—a substantial loss of an opportunity to advance his position, to be sure.

Conclusion

Mr. Qi has clearly established the detriment of his reliance on the Zengas' misrepresentations. By doing so, he has met the required elements to support relief in his favor for his claim of equitable estoppel.

Therefore, the motion to dismiss is DENIED and a separate order will be entered in each case.

*This Memorandum was signed and entered electronically as indicated at the top of the first page.*

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

7

Case 3:16-bk-01661    Doc 94    Filed 09/07/17    Entered 09/07/17 15:05:32    Desc Main
Document    Page 7 of 7